IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO WESTERN
DIVISION

| | | |
|---|---|---|
| Jane Doe 1 | ) | CASE NO. |
| Jane Doe 2, | | JUDGE |
|       PLAINTIFFS, | ) | |
|    V. | | |
| Manish Gupta | ) | **COMPLAINT** |
| Raj K. Gupta | | |
| Shraddha Gupta, | ) | |
|      DEFENDANTS | | |
| | ) | |

\* \* \* \* \* \* \*

COMES NOW Plaintiffs Jane Doe 1 and Jane Doe 2, by and through the undersigned counsel, and respectfully submits their complaint for damages and makes the following averments.

## Basis of Action and Preliminary Statements

1. Plaintiffs Jane Doe 1 and Jane Doe 2 were victims of labor and sex trafficking as defined by the Victims of Trafficking and Violence Protection Act of 2000. They were forced to engage in unpaid and/or underpaid labor and commercial sex acts by Defendant Manish Gupta.

2. Defendant Manish Gupta (hereinafter "Gupta") trafficked Plaintiffs by separately engaging in schemes using lies, intimidation, and manipulation to induce Plaintiffs into hotel rooms, where Gupta then forcibly and improperly drugged and performed nonconsensual sex acts on them.

3. Gupta was a medical doctor licensed by the State of Ohio and Michigan. He was a board-certified plastic surgeon by the American Board of Plastic Surgery.

4. Artisan Cosmetic Surgery Center (hereinafter "Artisan") was the medical practice where Manish and Raj Gupta were employed.

5. As the center where Gupta was employed, Artisan provided financial and logistical support to Manish in his trafficking offenses: he would plan and execute his trips using Artisan resources; and the lack of intervention from those with substantial personal and professional connections enabled him to continue his trafficking of dozens of women.

6. Artisan supported Gupta's trafficking by providing the funds for his travel to California and Las Vegas, where he committed his sexual assaults against the Plaintiffs. The funds purchased Gupta's flights; the transportation of his luggage where he stored the narcotics, sex toys, and video cameras used during the assaults; and the hotel rooms where the assaults occurred.

7. At the Artisan office, employees knew, or should have known, about the misuse of narcotics by Gupta and with appropriate monitoring of the office, saw or should have seen the inappropriate sex toys and cameras present in Gupta's bags and office.

8. In 2013, a telephone call was received at Artisan Cosmetic Surgery from a female caller indicating that Gupta had drugged her, raped her, and video recorded her. The caller accurately described identifying features of Gupta to corroborate her experience including his cellphone case with an Artisan logo and his blue vehicle. The employee who took the call relayed the information to Gupta, who responded that the woman was just trying to get money from him.

9. After this phone call, numerous other employees became aware of the allegations but no one intervened to inform the authorities or use the information in a manner that was conducive with uncovering the realities of Gupta's actions.

10. Later in 2013, employees opened Gupta's black bag he used for traveling and found multiple sex toys, anal lubricant, large plastic syringes, empty anesthesia bottles, women's lingerie, a blindfold, a tripod with a possible camera, and multiple narcotics.

11. In Late 2014, another employee found in Gupta's desk 10-20 SD cards, which they copied onto thumb drives. The content of those drives depicted several videos of Gupta having sex with women who appeared to be unconscious or rendered unconscious during filming. The women were identified as escorts. Another video showed a tube of lubricant with a woman who was conscious, the video turned off, and when it resumed the same woman was unconscious and non-responsive as Gupta had sex with her.

12. After viewing the above videos in late 2014, employees initially did nothing: they did not contact authorities or try to uncover more information. One employee stated they intended to use this video's information to extort money from Gupta, but chose not to. This employee later gave the thumb drive to another individual, who provided the drive to the FBI.

13. Through the enabling and assistance provided to Gupta by Artisan's employees, and the financial benefits received by having Gupta as a practicing doctor, Artisan knowingly benefited or received something of value from its facilitation of, or participation in, a venture in which it knew or should have known that Gupta had engaged in sex trafficking.

14. Jane Doe 1, an adult female, worked as a high-end escort who provided companionship and engaged in sexual activity for individuals willing to pay.

15. Jane Doe 2, an adult female, worked as a high-end escort who provided companionship and engaged in sexual activity for individuals willing to pay.

16. In January 2019, the FBI began investigating Gupta for allegations that he improperly drugged and then performed sex acts on victim Jane Doe 1 in 2016.

17. Through the investigation into Jane Doe 1, the FBI learned that Gupta improperly drugged and then performed sex acts on Jane Doe 2 in 2013 and 2017.

## Jurisdiction and Venue

18. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the law of the United States. This Court also has jurisdiction under 18 U.S.C. §§ 1591 and 1595, which permit civil actions for violations of the trafficking provisions of the Victims of Trafficking and Violence Protection Act of 2000.

19. This Court has supplemental jurisdiction over the state claims of California Civil Code § 52.5, Nevada Revised Statutes Annotated § 41.1399, and ORC Ann. § 1336.04 as these claims arise out of the same common nucleus of operative facts which support the federal claims.

20. This Court has personal jurisdiction over Gupta. The United States Attorney for the Northern District of Ohio brought criminal charges against Gupta for the conduct alleged in this complaint. He pled guilty to Sex Trafficking by force, fraud, or

coercion and illegally dispensing a controlled substance, and was sentenced to 235 months.

21. This Court has personal jurisdiction over Raj Gupta because he was employed at the Toledo Artisan office at the time of the trafficking.

22.  This Court has personal jurisdiction over Shraddha Gupta because she was married to Gupta at the time of the trafficking and was domiciled in Ohio.

23. Venue is proper pursuant to 29 U.S.C. § 1391(b) because defendant Gupta and Shraddha Gupta reside in this District and Raj Gupta was a business partner at Artisan in this District.

### Parties

24. Plaintiff Jane Doe 1 is a 34-year-old permanent resident of the United States, domiciled in California.

25. Plaintiff Jane Doe 2 is a citizen of the United States, domiciled in California.

26. Defendant Gupta is a 45-year-old citizen of the United States. Gupta resided in Sylvania, Ohio at the time of the trafficking, but was on a business trip to Los Angeles, California, during the time of the trafficking, rape, and abuse of Jane Doe 1; and a business trip to Las Vegas, Nevada and Detroit, Michigan respectively, during the times of the trafficking, rape, and abuse of Jane Doe 2.

27. Artisan's Toledo Office is located at 7634 West Central Ave, Toledo, OH 43617.

28. Raj Gupta is Manish's Father and was business partner at Artisan.

29. Shraddha Gupta was Manish Gupta's wife at the time of the assaults.

## Factual Allegations

A. **Trafficking in Persons**

30. Trafficking in persons "affects every region and every country in the world." (See U.S. Dep't of State, Trafficking in Persons Report at 1-2 (June 2011) ("TIP 2011")).

31. Human traffickers most frequently prey on "those who have become empowered enough to aspire to a better life but have few good options for fulfilling those aspirations." *Id.* at 24). Often using "subtle forms of fraud and coercion that . . . prevent a person from escaping compelled servitude," traffickers trick, coerce, or win the confidence of their victims, "exploit[ing] their victims' trust and confidence in their own ability to succeed." *Id.* at 24.

32. Sex trafficking is defined under 22 U.S.C. § 7102 as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three (3) elements of sex trafficking as a criminal offense: the purpose, the means, and the act.

33. Sex trafficking is trafficking for the <u>purpose</u> of commercial sex. The <u>act</u> is the harboring, transporting, providing, or obtaining of forced labor, as codified in 18 U.S.C. § 1590. The <u>means</u> is labor "obtained or provided by force, fraud, or coercion" and is codified as a violation of 18 U.S.C. § 1589.

34. All who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking in violation of 18 U.S.C. §§ 1589 and 1590.

35. In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act (the "TVPA") to combat trafficking in persons for the purpose of forced labor and forced prostitution by punishing the traffickers and compensating the victims.

36. The TVPA provides a civil remedy for victims of sex trafficking and/or labor trafficking. 18 U.S.C. § 1595.

B. **Gupta's Recruiting, Trafficking, and Drugging of Jane Doe 1**

37. From August 9, 2016 through September 23, 2016, Jane Doe 1 and Gupta had multiple email exchanges to arrange logistics of a date between Gupta and Jane Doe 1, including the location, length and payment of the date.

38. Gupta advised Jane Doe 1 of his sexual desires, which included role play with sex toys, blindfold, anal sex, clothing requests, and his request to video tape it.

39. Jane Doe 1 advised Gupta that she did not consent to his request to record, replying "no video or photography. My privacy is paramount. And I won't be comfortable with being filmed under any circumstances, not even with a mask."

40. Records obtained through the FBI's criminal investigation confirm that Gupta stayed at The Ritz Carlton in Los Angeles from September 21-26, 2016. He shipped a medical bag to the hotel where he was staying, which he then shipped back to his Toledo office after the conference.

41. Jane Doe 1 met Gupta on September 23, 2016 at the JW Marriott in Los Angeles, CA.

42. Jane Doe 1 performed consensual oral sex on Gupta in his hotel room before dinner.

43. After dinner, Gupta requested that Jane Doe 1 stand on a table, turn away from him, and slowly take off her clothing. Jane Doe 1 believes Gupta could have been

recording her because he demanded she do it so many times and because it involved having her back to him.

44. Gupta then told Jane Doe 1 to get changed into the lingerie he asked her to wear and he poured each of them a glass of Prosecco.

45. After Jane Doe 1 sipped out of the glass Gupta gave to her, Gupta told her to insert anal beads and then told her to remove them.

46.  Jane Doe 1 consented to anal sex, but did not consent to being drugged by Gupta, nor was she notified by Gupta at any point that she was going to be administered a drug.

47. After removing the anal beads, Jane Doe 1 had little recollection and believes she was drugged to the point of unconsciousness.

48. Jane Doe 1 awoke in the morning, believing she had been drugged, and left the room while Gupta was in the bathroom.

49. Jane Doe 1 took an at-home drug test with a urine sample, which tested positive for Benzodiazepine. Jane Doe 1 did not know what a Benzodiazepine was, or the reason for taking it, until she looked online.

50. Jane Doe 1 went to the Rape Treatment Center at Santa Monica/ UCLA Medical Center and underwent a rape exam in which vaginal, anal, and other swabs were taken from her. Jane Doe 1 also provided them with the urine sample she had previously taken.

51. As a result of what Gupta had done to her, Jane Doe 1 went on different websites (SafeOffice.com and Verifyhim.com), which are verification tools for women to

stay safe in a world of online dating, and where escorts and other women can share information about dangerous men.

52. While on this website, she learned she was not the first victim to be drugged, raped, and likely video-recorded by Gupta. Jane Doe 1 found multiple complaints dating from March 2013 through September 2016, identifying Manish Gupta as a plastic surgeon from Toledo, Ohio and characterizing him as "Very Dangerous," "Drug User/ Drug Present," "raped me during date…he also recorde[sic] a video." Another stated, "Dr. Manish Gupta (www.artisancosmeticsurgery.com) drugged me during a date, raped me, and recorded all this terrible even on video. His medical license should be suspended."

C. **Gupta's Recruiting, Trafficking, and Drugging of Jane Doe 2**

53. In 2013, Jane Doe 2 was drugged and raped by Gupta in Las Vegas, Nevada.

54. Jane Doe 2 consented for Gupta to use a sex toy on her at dinner, however, while she went to the restroom, Gupta improperly administered drugs in her wine.

55. After Gupta drugged her, Jane Doe 2 began to feel dizzy and then lost most memory of the night. Jane Doe 2 had not used other substances to cause a high level of intoxication.

56. Gupta then raped Jane Doe 2 inside of their hotel room.

57. In 2017, Jane Doe 2 was drugged and raped by Gupta in Detroit, Michigan.

58. Jane Doe 2 consented to anal sex with Gupta.

59. Prior to the intercourse, Jane Doe 2 used an anal douche.

60. After using it, Jane Doe 2 began to feel extremely dizzy. She had not consumed any substances voluntarily.

61. Gupta manipulated the anal douche to improperly administer drugs into Jane Doe 2's body through the anal douche.

62. Gupta then raped Jane Doe 2 inside of their hotel room.

D. **2019 Federal Investigation into Gupta**

63. In 2019, the FBI obtained a federal search warrant for thumb drives owned by Gupta. Those thumb drives contained five different videos of Gupta engaging in sex acts with four different unconscious women. The videos depict at least three different cameras.

64. In all three videos, Gupta appears naked and with an erect penis. Gupta's face is visible to the camera at various points during the recordings, as he positions and re-positions cameras, as well as engages in sex acts.

65. The women in the videos all have their genitalia exposed as they lie on the bed and appear largely motionless unless physically moved by Gupta himself.

66. All but one of the women are wearing black hosiery, black heels, and/or dark corsets, consistent with the attire that Gupta told Jane Doe 1 to wear.

67. In at least one recording, Gupta's medical bag, which was routinely shipped to conferences, can be seen on a desk, and at one point of the recordings, Gupta is seen inserting an anal lube shooter into an unconscious female.

68. Throughout the entire investigation, agents identified dozens of women who were victimized in the same way as the Plaintiffs.

E. **The State of Ohio Board of Pharmacy Investigation into Gupta and His Practice**

69. The State of Ohio Board of Pharmacy conducted a routine audit of controlled substances at the Artisan Surgery Center on January 20, 2016, eight months before Gupta drugged, raped, and recorded Jane Doe 1.

70. The inspection revealed multiple violations: Gupta's practice had failed to properly complete the necessary DEA forms when drugs were delivered to the practice, it had failed to maintain a record of the identification of the individuals who prescribed, administered, dispensed, and/or wasted or destroyed narcotics, and it failed to complete an annual inventory of controlled substances that included all information required by Ohio Administrative Code 4729-9-14.

71. The Pharmacy Board conducted another audit of controlled substances at the Artisan Cosmetic Surgery Center on December 17, 2019 and found that Gupta failed to have adequate systems in place to detect and deter drug diversion. Like in 2016, this investigation found that the DEA forms were not properly completed when drugs were received, including documenting the quantity and date of receipt, and there was no record of the identification of individuals responsible for the acts of prescribing, administering, dispensing, and wasting controlled substances, and no annual inventories had been done of controlled substances in 2017 or 2019.

72. The Pharmacy Board sought and obtained records from the drug distributors themselves for all purchases made between December 1, 2016 and December 31, 2019 under Gupta's DEA number or his facility's DEA number, and cross-referenced those to Gupta's office-provided records of accountability regarding drug administrations, returns, and destructions.

73. Gupta's records did not match the audit results. Significant, unaccounted-for losses of drugs were identified, including Ketamine, Diazepam/Valium, Fentanyl, and Morphine.

74. In addition, the Pharmacy Board audit revealed that Gupta had received a shipment of Ketamine on September 12, 2016, just two weeks before he drugged Jane Doe 1.

75. An employee stated that Ketamine, an anesthesia drug, was rarely, if ever, used by Dr. Gupta in his practice.

F. **2020 Federal Search Warrant and Investigation into Manish Gupta**

76. On February 12, 2020, the State of Ohio Medical Board received a complaint that Gupta has been raping women for years.

77. On or about February 17, 2020, an unknown female caller reported to the Toledo Police Department that Gupta has been drugging, raping, and videotaping women for years.

78. Based upon the above information, a federal search warrant was executed on March 6, 2020 for Gupta's residence, two Lucas County medical offices, vehicle (Audi R8), cellular telephone, person, including the taking of a DNA standard, and all electronic devices at those places.

79. Gupta had his own private office at his Toledo medical practice on West Central Avenue. His private office was kept locked. Only Gupta and the office manager had a key to his private office.

80. In Gupta's private office at his Toledo medical practice, agents located a plastic bag containing sex toys (anal beads and vibrator), an "Anal Eaze Insertz" device, a package of "Lube Tubes," a syringe, several cameras/tripods, several loose SD

cards, as well as an SD card inside one of the cameras, a plastic baggie of loose pills, Diazepam suppositories, and vials of Diazepam and Ketamine. The vial of Ketamine was partly empty. The label on the vial of Ketamine advised, "For Slow Intravenous or Intramuscular Use."

81. A nurse in Gupta's practice advised that they did not use Diazepam suppositories in their practice, nor would they have a need to insert anything into a patient's anus as part of their plastic surgery and cosmetic practice.

82. Also located in Gupta's office were three handheld video-cam recorders, a tripod, additional sex toys (anal beads and another vibrator that was the same brand and packaging as the one in the other plastic bag), a drawer full of additional SD cards, and a large amount of controlled substances, including Midazolam (Schedule IV benzodiazepine/sedative to relax patients before surgery), Diazepam (Schedule IV/benzodiazepine used for anxiety), and Ketamine (Schedule III drug used to assist in anesthesia that induces a trance-line state while providing pain-relief, sedation, and memory loss).

83. An employee of Gupta's advised that the controlled substances found in Gupta's private office should not have been kept in there, but rather in the office's locked storage specifically for controlled substances.

84. The agents viewed the contents of an SD card in one of Gupta's cameras in his private office and observed a video recording of Gupta having sex with an unidentified Caucasian woman who appeared to be unconscious in what appeared to be a hotel room. An anal lube shooter was observed at one point in the video. The date displayed on the recording was December 17, 2019.

85. Overall, agents seized 60 SD cards with over 40 women.

**First Claim for Relief**
**(Forced Labor Under 18 U.S.C. §§ 1589, 1595)**

86. Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

87. A victim may bring an 18 U.S.C. § 1589 claim under 18 U.S.C. § 1595 against any person, including any business entity, who knowingly provides or obtains the labor or services of another person, by means of actual or threatened serious harm, including financial harm, to the victim or a third party, or by means of actual or threatened abuse of the legal process.

88. In violation of 18 U.S.C. § 1589, Defendant Gupta knowingly obtained the labor or service of Plaintiffs Jane Doe 1 and Jane Doe 2 by means of force, serious harm, actual physical harm, and psychological coercion as part of a scheme to benefit from their labor without compensating them.

89. After compelling the women to meet in the hotel room for the purpose of engaging in commercial sex, Defendant Gupta obtained labor or services of Plaintiffs Jane Doe 1 and Jane Doe 2 by means of force through intentionally drugging them into unconsciousness and forcefully engaging in nonconsensual sexual acts with them.

90. Plaintiffs Jane Doe 1 and Jane Doe 2 are authorized to bring this civil claim against Defendant pursuant to the civil remedies under 18 U.S.C. § 1595.

91. As a business partner at Artisan, Raj Gupta was in a position of authority at Artisan and knew or should have known about the improper maintenance of drugs at Artisan, and of the inappropriate contents of the bags they were shipping for Defendant Gupta. Raj Gupta was in the position to implement and enforce basic

adequate measures to ensure proper procedures were being followed at Artisan, but did nothing. This enabled Defendant Gupta to assault Jane Doe 1 and Jane Doe 2.

92. As Manish Gupta's wife, Shraddha Gupta received a letter from Jane Doe 1 in 2016 detailing the horrific acts that Manish forced upon her. Upon receipt of this letter, Shraddha did nothing. She kept the letter, but did nothing to uncover the realities of Manish's behavior. Her inaction enabled Manish Gupta to continue his trafficking of women, which led to his second rape of Jane Doe 2 in 2017.

93. As a direct and proximate result of Defendant Gupta, Shraddha Gupta, and Raj Gupta's forceful acts, Plaintiffs Jane Doe 1 and Jane Doe 2 suffered harm, including physical injuries, mental suffering, humiliation, emotional distress, and economic loss, entitling them to damages in amounts to be proven at trial and reasonable attorney's fees.

## Second Claim for Relief
**(Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor Under 18 U.S.C. §§ 1590, 1595)**

94. Plaintiffs Jane Doe 1 and Jane Doe 2 allege and re-allege the paragraphs above as if fully set forth herein.

95. A victim may bring a § 1590 claim under 18 U.S.C. § 1595 against any person who knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of 18 U.S.C. §§ 1589 and/ or 1590.

96. Gupta engaged in email correspondence with both Jane Doe 1 and Jane Doe 2 respectively prior to meeting each woman in person. He emailed them to coordinate and plan out the details of the visits knowing that his intention was to drug the women into unconsciousness and rape them.

97. In violation of 18 U.S.C. § 1590, Defendant Gupta knowingly recruited, enticed, harbored, and maintained Plaintiff Jane Doe 1 into The Ritz Carlton in Los Angeles and thereafter forced her to engage in nonconsensual commercial sex acts.

98. In violation of 18 U.S.C. § 1590, Defendant Gupta knowingly recruited, enticed, harbored, and maintained Plaintiff Jane Doe 2 into two hotels—one in Las Vegas, Nevada and one in Detroit, Michigan—and thereafter forced her to engage in nonconsensual commercial sex acts.

99. Plaintiffs Jane Doe 1 and Jane Doe 2 bring this claim pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of trafficking.

100. As a business partner at Artisan, Raj Gupta was in a position of authority at Artisan and knew or should have known about the improper maintenance of drugs at Artisan, and of the inappropriate contents of the bags they were shipping for Defendant Gupta. Raj Gupta was in the position to implement and enforce basic adequate measures to ensure proper procedures were being followed at Artisan, but did nothing. This enabled Defendant Gupta to assault Jane Doe 1 and Jane Doe 2.

101. As Manish Gupta's wife, Shraddha Gupta received a letter from Jane Doe 1 in 2016 detailing the horrific acts that Manish forced upon her. Upon receipt of this letter, Shraddha did nothing. She kept the letter, but did nothing to uncover the realities of Manish's behavior. Her inaction enabled Manish Gupta to continue his trafficking of women, which led to his second rape of Jane Doe 2 in 2017.

102. As a direct and proximate result of Defendant Gupta, Shraddha Gupta, and Raj Gupta's forceful acts, Plaintiffs Jane Doe 1 and Jane Doe 2 suffered harm, including physical injuries, mental suffering, humiliation, emotional distress, and economic

loss, entitling them to damages in amounts to be proven at trial and reasonable attorney's fees.

**Third Claim for Relief**
**(Human Trafficking under California Civil Code § 52.5)**

103.  Plaintiff Jane Doe 1 alleges and re-alleges the paragraphs above as if fully set forth herein.

104.  California Civil Code section § 52.5 allows a victim of human trafficking, as defined in California Penal Code § 236.1, to recover, in a civil action, actual damages, compensatory damages, punitive damages, and any other appropriate relief, as well as attorney's fees and costs of suit.

105.  A victim may bring a claim under California Civil Code § 52.5 against any person who violates or deprives the victim of his personal liberty with the intent to obtain forced labor or services, or who restricts the victim's body through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury. Forced labor or services means labor or services that are performed or provided by a person, and are obtained or maintained through force, fraud, or coercion, or equivalent conduct that would reasonably overbear the will of the person.

106.  Defendant Gupta deprived Plaintiff Jane Doe 1 of her personal liberty through forcing her to perform sexual labor and services and restricting her body through violence.

107.  Defendant Gupta acted with menace and used violence and injury to overcome Jane Doe 1's will by unlawfully forcing her into unconsciousness with the administration of illegal drugs and forcing her to perform nonconsensual sexual acts.

108.  Through such actions, Defendant acted with malice, oppression, fraud, and duress to traffick Jane Doe 1.

109.  As a direct and proximate result of Gupta's acts, Plaintiff Jane Doe 1 suffered harm, including physical injuries, mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

**Fourth Claim for Relief**
**(Action by Victim in Human Trafficking under Nevada Revised Statutes Annotated § 41.1399)**

110.  Plaintiff Jane Doe 2 alleges and re-alleges the paragraphs above as if fully set forth herein.

111.  Nevada Revised Statutes Annotated §41.1399 allows a victim of human trafficking, as defined in Nev. Rev. Stat. Ann § 200.463 to § 200.468, to bring a civil action against the person who caused, was responsible for, or profited from the human trafficking to recover actual damages, compensatory damages, punitive damages, or any other appropriate relief, as well as attorney's fees and costs of suit.

112.  Under Nev. Rev. Stat. Ann § 200.463, a person causes human trafficking by knowingly subjecting another person to forced labor or services by causing or threatening to cause physical harm to any person or physically restraining or threatening to physically restrain any person.

113.  Defendant Gupta knowingly subjected Jane Doe 2 to forced labor or services causing physical harm by acting with menace and using violence and injury to overcome the Plaintiff's will by unlawfully forcing her into unconsciousness with

the administration of illegal drugs and forcing her to perform nonconsensual sexual acts.

114.  As a direct and proximate result of Gupta's acts, Plaintiff Jane Doe 2 suffered harm, including physical injuries, mental suffering, humiliation, emotional distress, and economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

**<u>Fifth Claim for Relief</u>**
**(Human Trafficking under Ohio Revised Code § 2905.32)**

115.  Ohio Revised Code § 2307.51 allows a victim of human trafficking, as defined in Ohio Revised Code § 2905.32, to commence a civil cause of action for compensatory and punitive damages against the trafficker.

116.  A victim may bring a claim under Ohio Revised Code § 2905.32 against any person who knowingly recruits, lures, entices, isolates, harbors, transports, provides, obtains, or maintains, or knowingly attempts to recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, another person if the offender knows that the other person will be subjected to involuntary servitude or be compelled to engage in sexual activity for hire, engage in a performance that is obscene, sexually oriented, or nudity oriented, or be a model or participant in the production of material that is obscene, sexually oriented, or nudity oriented.

117.  The element of "compelled" does not require that the compulsion be openly displayed or physically exerted. It has been established if the state proves that the victim's will was overcome by force, fear, duress, intimidation, or fraud.

118.  In the state of Ohio, Defendant Gupta knowingly recruited, lured, and enticed Plaintiffs Jane Doe 1 and Jane Doe 2 by using multiple email exchanges with plaintiffs to coordinate and plan the location of the eventual assault.

119.  Defendant Gupta recruited, lured, and enticed Plaintiffs knowing that the Plaintiffs would be subjected to involuntary servitude and compelled to engage in sexual activity for hire with a performance that is obscene and sexually oriented and in the production of material that is obscene and sexually oriented.

120.  In the investigation of Defendant Gupta, the FBI found SD cards containing videos that the Defendant recorded of himself having sex with the unconscious bodies of dozens of women, including the Plaintiffs. These videos dated over a span of 14 years, including before and after his assault of the Plaintiffs. Therefore, because he had done it multiple times before, he was aware of his predatory intentions in arranging to meet the Plaintiffs.

121.  Defendant Gupta knowingly prepared, packaged, and shipped a medical bag to both of the locations where he assaulted Jane Doe 1 and Jane Doe 2.

122.  Employees at Artisan aided Defendant Gupta by assisting him in preparing, packaging, and shipping his medical bag to both of the locations where he assaulted Jane Doe 1 and Jane Doe 2.

123.  In Defendant Gupta's private office in Toledo, agents located a plastic bag containing sex toys, lube, a syringe, several cameras/tripods, several loose SD cards, and loose pills. Defendant used all of these items during his assault on the Plaintiffs.

124.  Employees at Artisan knew or should have known about the improper maintenance of drugs at Artisan, and of the inappropriate contents of the bags they were shipping for Defendant Gupta. Through irresponsible, willful blindness, the employees failed to recognize these signs as inappropriate indicators of sexual activity, which enabled Defendant Gupta to rape Jane Doe 1 and Jane Doe 2.

125.  As a business partner at Artisan, Raj Gupta was in a position of authority at Artisan and knew or should have known about the improper maintenance of drugs at Artisan, and of the inappropriate contents of the bags they were shipping for Defendant Gupta. Raj Gupta was in the position to implement and enforce basic adequate measures to ensure proper procedures were being followed at Artisan, but did nothing. This enabled Defendant Gupta to rape Jane Doe 1 and Jane Doe 2.

126.  As Manish Gupta's wife, Shraddha Gupta received a letter from Jane Doe 1 in 2016 detailing the horrific acts that Manish forced upon her. Upon receipt of this letter. Shraddha did nothing. She kept the letter, but did nothing to uncover the realities of Manish's behavior. Her inaction enabled Manish Gupta to continue his trafficking of women, which led to his second rape of Jane Doe 2 in 2017.

127. As a direct and proximate result of Defendant Gupta, Shraddha Gupta, Artisan, and Raj Gupta's forceful acts, Plaintiffs Jane Doe 1 and Jane Doe 2 suffered harm, including physical injuries, mental suffering, humiliation, emotional distress, and economic loss, entitling them to damages in amounts to be proven at trial and reasonable attorney's fees.

**Sixth Claim for Relief**
**(Forced Labor and Labor Trafficking**
**Michigan Human Trafficking Victims Protection Act**
**M.C.L. § 752.983, § 750.462(b))**

128.  Plaintiff Jane Doe 2 alleges and re-alleges the paragraphs above as if fully set forth

herein.

129.  M.C.L. § 752.983 creates liability to a victim of the violation of M.C.L. §

750.462(b) for economic and noneconomic damages that result from the violation,

including but not limited to: physical pain and suffering; mental anguish; denial of

social pleasure and enjoyments; reasonable expenses of necessary medical or

phycological care treatment, and services; loss of earnings and earning capacity; and

any other reasonable expenses incurred as a result of this violation. The victim is

entitled to damages regardless of whether the violator was charged with or convicted

of a violation.

130.  M.C.L. § 750.462(b) provides that a person shall not knowingly recruit, entice,

harbor, transport, provide, or obtain an individual for forced labor or services.

131.   M.C.L. § 750.462(a) Defines "forced labor or services" as "labor or services that

are obtained or maintained by force, fraud, or coercion."

132.  Defendant Gupta knowingly subjected Jane Doe 2 to forced labor or services

causing physical harm by acting with menace and using violence and injury to

overcome the Plaintiff's will by unlawfully forcing her into unconsciousness with the

administration of illegal drugs and forcing her to perform nonconsensual sexual acts.

133.  As a direct and proximate result of Gupta's acts, Plaintiff Jane Doe 2 suffered harm,

including physical injuries, mental suffering, humiliation, emotional distress, and

economic loss, entitling her to damages in amounts to be proven at trial and reasonable attorney's fees.

### **Seventh Claim for Relief**
**(When a Transfer or Obligation Incurred is Fraudulent as to a Creditor**
**ORC Ann. § 1336.04)**

134.  Plaintiffs Jane Doe 1 and Jane Doe 2 allege and re-allege the paragraphs above as if fully set forth herein.

135.  O.R.C. 1336.04 allows for a civil action on fraudulent transfers. A transfer is fraudulent if the debtor made the transfer or incurred the obligation in either of the following ways:

> (1) With the actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and either of the following applies:
>
>> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (b) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

136.  Determining actual intent under § 1336.04 may involve consideration of all relevant factors, including but not limited to: whether the transfer or obligation was to an insider; whether the transfer or obligation was disclosed or concealed; whether the transfer was of substantially all of the assets of the debtor; and whether the

debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

137.  As noted by the Court at Defendant Gupta's criminal sentencing proceeding, Gupta made a fraudulent transfer of all of his assets to his wife, Shraddha Gupta, when they attempted to transfer all of his and the mutual marital property into his wife's control.

138.  In consideration of some of the relevant § 1336.04 factors to determine Gupta's fraudulent intent: this transfer of assets was to an insider, his wife; the transfer or obligation was not disclosed, it was discovered by law enforcement and through the monitoring of his accounts; the transfer was of substantially all of the assets of Gupta to his wife; and the debtor became insolvent after this transfer.

139.  As the Judge noted during Defendant Gupta's criminal sentencing proceeding, it is not reasonable that during a divorce proceeding, there is a "transfer of upwards of $9 million in assets with no consideration."

140.  The judge noted, "that's not an ordinary divorce" and held that the transfer of all of his assets was a fraudulent conveyance.

141.  As a direct and proximate result of Shraddha and Defendant Gupta's acts, Plaintiffs Jane Doe 1 and Jane Doe 2 suffered harm, entitling them to damages in amounts to be proven at trial and reasonable attorney's fees.

## **Prayers for Relief**

Wherefore, Plaintiffs respectfully request that judgment be granted as follows, in excess of one million dollars:

142.  Money damages for each Claim for Relief,

143.  Punitive and exemplary damages according to proof,

144.  Attorneys' fees and costs for Plaintiff against the Defendants, and

145.  Such other further relief as the Court may deem just and proper.

## **Jury Demand**

146.  Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Stephen Hartman*
Stephen Hartman, No. 007494
shartman@snlaw.com
Spengler Nathanson P.L.L.
900 Adams Street
Toleo, Ohio 43604
PH: (419)-252-6227
Facsimile: (419)-241-8599

*/s/ Sarah Anjum*
Sarah Anjum, No. 0089387
sarah@anjumlaw.com
Advocating Opportunity
2 Maritime Plaza, First Floor
Toledo, Ohio 43604
Telephone: 419-344-5106
Facsimile: 419-458-3134

*Counsel for Plaintiffs Jane Doe 1 and Jane Doe 2*