UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jane Doe 1, *et al.*,            Case No. 3:22-cv-1122

      Plaintiffs,

v.            MEMORANDUM OPINION
           AND ORDER

Manish Gupta, *et al.*,

      Defendants.

## I. INTRODUCTION

On March 19, 2020, Manish Raj Gupta was indicted by a federal grand jury on one count of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1), and one count of illegally dispensing a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(7). *See United States v. Gupta*, Case No. 3:20-cr-208 (N.D. Ohio). These charges arose from allegations that Manish had surreptitiously drugged women before engaging in sex acts with them without their consent. Manish subsequently pled guilty to both charges and my colleague, Judge James G. Carr, sentenced him to serve 235 months in prison.

On June 26, 2022, two of Manish's alleged victims initiated this litigation,[1] asserting claims against Manish, his father (Raj Gupta), and his now-former wife (Shraddha Gupta) for: (1) Forced Labor under 18 U.S.C. §§ 1589 and 1595; (2) Trafficking with respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor under 18 U.S.C. §§ 1590 and 1595; (3) Human Trafficking

---

[1] I previously granted Plaintiffs' motion to proceed using the pseudonyms "Jane Doe 1" and "Jane Doe 2." (Doc. No. 42).

pursuant to California Civil Code § 52.5; (4) Action by Victim in Human Trafficking pursuant to Nevada Revised Statutes Annotated § 41.1399; (5) Human Trafficking pursuant to Ohio Revised Code § 2905.32; (6) Forced Labor and Labor Trafficking, Michigan Human Trafficking Victims Protection Act M.C.L. § 752.983, § 750.462(b); and (7) fraudulent transfer, pursuant to Ohio Revised Code § 1336.04. (Doc. No. 1).

In early October 2022, Shraddha filed a motion for partial judgment on the pleadings, (Doc. No. 17), and Manish filed a motion to dismiss. (Doc. No. 19). Plaintiffs responded to those motions by filing their First Amended Complaint, which includes some additional factual allegations. (Doc. No. 23). Shraddha and Manish each moved to strike the First Amended Complaint, arguing its filing was procedurally improper.[2] (Doc. Nos. 24 and 31). Plaintiffs opposed those motions, (Doc. Nos. 28 and 35), and both Defendants filed briefs in reply. (Doc. Nos. 30 and 39).

There are four other motions pending. The first is Plaintiffs' motion for a protective order, (Doc. No. 26), to which Manish objects. (Doc. No. 32). The second is Manish's motion for entry of an order directing Plaintiffs to show cause why their attorneys should not be sanctioned. (Doc. No. 33). Plaintiffs oppose this motion. (Doc. No. 36). The third motion is Manish's motion for the production of documents. (Doc. No. 34). And the final motion is Manish's motion for an extension of time. (Doc. No. 43).

## II. BACKGROUND

Manish previously was a board-certified plastic surgeon and owner of Artisan Surgery Center, LLC. Plaintiffs allege Manish began drugging and sexually assaulting women, including women like Plaintiffs who worked as escorts, as early as 2013. (Doc. No. 1 at 3). Manish allegedly used prescription drugs he obtained through his medical practice to incapacitate the women before

---

[2] Raj Gupta filed an Answer to both the original Complaint and the First Amended Complaint. (Doc. Nos. 18 and 25).

filming himself performing sexual acts with them. Manish allegedly drugged and raped Jane Doe 2 in 2013, while on a business trip to Las Vegas, Nevada, and in 2017, while on a business trip to Detroit, Michigan. (*Id.* at 4-5). Manish allegedly drugged and raped Jane Doe 1 in 2016, while on a business trip to Los Angeles, California. (*Id.*). Plaintiffs allege Manish planned these assaults before his trips and that he would take a bag with sex toys, lubricants, a camera, and narcotics with him while he traveled. (*Id.* at 3, 7-10, 12-13).

Plaintiffs allege Raj (as Manish's business partner in Artisan, where he kept his travel bag) and Shraddha (as Manish's wife and the recipient in 2016 of a letter from Jane Doe 1 accusing Manish of sexually assaulting her) enabled Manish's conduct when they failed to act on information they knew or should have known. (*See, e.g., id.* at 14-15).

### III.  DISCUSSION

#### A. MOTIONS TO STRIKE

As I noted above, both Manish and Shraddha move to strike Plaintiffs' First Amended Complaint. These Defendants first argue Plaintiffs' filing was improper because the 21-day period for filing without leave of court or consent had passed and because Plaintiffs did not seek leave to amend. (Doc. No. 24-1 and Doc. No. 31 at 2-3). Plaintiffs assert they were entitled to amend their complaint as of right under Rule 15(a)(1) because it was filed within 21 days of the date on which the last Defendant (Raj) filed a responsive pleading or Rule 12 motion. (Doc. No. 28-1 at 2). But Plaintiffs do not cite any caselaw in support of this position and I conclude their arguments are not persuasive.

Rule 15 provides:

(1) A party may amend its pleading once as a matter of course within:

    (A) 21 days after serving it, or

> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Prior to 2009, some courts held the position that "[i]f there is more than one defendant, and not all have served responsive pleadings, [Rule 15(a) permits] the plaintiff [to] amend the complaint as a matter of course with regard to those defendants that have yet to answer." *Williams v. Savage*, 569 F. Supp. 2d 99, 104 (D.D.C. 2008) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. 2d § 1481). But, in 2009, Rule 15(a) was amended. The Advisory Committee Notes state:

> The distinction drawn in former Rule 15(a) is changed in two ways. First, the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). . . .
>
> Second, the right to amend once as a matter of course is no longer terminated by service of a responsive pleading. . . . Just as amendment was permitted by former Rule 15(a) in response to a motion, so the amended rule permits one amendment as a matter of course in response to a responsive pleading. The right is subject to the same 21-day limit as the right to amend in response to a motion.

2009 Advisory Committee Notes to Fed. R. Civ. P. 15. Importantly, the Advisory Committee also stated "[t]he 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative. If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period." *Id.*

Taken together, these changes mean that a plaintiff's 21-day clock to amend without leave of court applies to the case as a whole, not to individual defendants, and it begins to run with the <u>first</u> responsive pleading or Rule 12 motion filed in the case. *See, e.g., U.S. ex rel. Carter v. Halliburton Co.*,

4

144 F. Supp. 3d 869, 878 (E.D. Va. 2015) (holding that in cases with multiple defendants, "the twenty-one day period to amend as a matter of course begins on the date of the earliest defensive action") (citing cases) (subsequent history omitted); *Wilkie v. CTW Acquisition, LLC*, No. 16-CV-1784, 2017 WL 10505349, at *3 (D. Minn. July 25, 2017) ("In cases that involve multiple defendants, the 21-day period to amend the complaint begins to run when the first responsive pleading or Rule 12(b) motion to dismiss is filed, and that time limit does not reset when a different defendant files a later response.") (citing *Kieffer v. Tundra Storage LLC*, No. 14-3192, 2015 WL 5009012, at *3 (D. Minn. Aug. 21, 2015)). *See also Trujillo v. City of Newton, Kan.*, No. 12-2380-JAR-DJW, 2013 WL 535747, at *1 (D. Kan. Feb. 12, 2013) (holding cases predating the 2009 amendments to Rule 15 are not longer applicable to the question of when the plaintiff is required to seek leave to amend).

Shraddha filed her Answer to the Complaint on August 25, 2022. (Doc. No. 10). Rule 15(a)(1)'s 21-day clock began to run the following day and expired on September 15, 2022. Plaintiffs did not file their First Amended Complaint until October 25, 2022. (Doc. No. 23). Therefore, Plaintiffs were no longer entitled to amend as a matter of course and were required to seek leave to amend. Therefore, I grant Defendants' motions to strike on this basis.

In their briefs in opposition to the motions to strike, Plaintiffs maintain that, if I conclude they improperly amended without leave, they should be granted leave to amend under Rule 15(a)(2). (Doc. No. 28-1 at 2-6; Doc. No. 35 at 2-4). Shraddha and Manish argue I should not grant leave to amend because the proposed amendments are futile and would cause them undue prejudice. (Doc. No. 30 at 2-8; Doc. No. 39 at 2-3). I conclude these arguments are best considered in the context of the Rule 12 motions below.

B. **MOTION TO DISMISS**

Manish moves to dismiss Counts One and Two, arguing Plaintiffs fail to state a plausible claim for relief in those causes of action, and that Counts Three through Seven should be dismissed because they do not state a claim under federal law. (Doc. No. 19).

Rule 12 permits a defendant to move to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir. 2008).

1. **Count One**

In Count One, Plaintiffs seek the civil remedy provided by the Trafficking Victims Protection Act (the "TVPA"), which permits "[a]n individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Plaintiffs

6

allege Manish is a perpetrator of "forced labor," criminalized by § 1589, as one who "knowingly . . . obtain[ed] the labor or services of a person by means of force . . . [or] physical restraint . . . ." 18 U.S.C. § 1589(a).

Plaintiffs allege Manish violated § 1589 when he "knowingly obtained the labor or service of Plaintiffs Jane Doe 1 and Jane Doe 2 by means of force, serious harm, actual physical harm, and psychological coercion as part of a scheme to benefit from their labor without compensating them." (Doc. No. 1 at 14). Further, Plaintiffs allege Manish "obtained labor or services of Plaintiffs Jane Doe 1 and Jane Doe 2 by means of force through intentionally drugging them into unconsciousness and forcefully engaging in nonconsensual sexual acts with them." (*Id.*). They allege Manish planned these assaults while corresponding with them prior to his business travel to arrange dates with them, and brought sex toys, prescription drugs, and cameras with him so that he could record himself having sex with Plaintiffs after drugging them. (*Id.* at 7-10).

Manish first contends Plaintiffs fail to state a claim for relief in Count One because they do not allege "what labor or services" they were forced to perform. (Doc. No. 19 at 1-2). This argument is not persuasive. Plaintiffs' allegations give Manish "fair notice" that the labor or services they allegedly were forced to perform were sexual acts. *Erickson*, 551 U.S. at 93 (citation and internal quotation marks omitted).

Next, Manish asserts Plaintiffs cannot state a plausible claim for relief because caselaw does not establish that events occurring while the victim is unconscious qualify as "labor or services" within the contours of § 1589. (Doc. No. 19 at 3-8).

This argument also is unpersuasive, as other courts have convincingly held that forced sexual activity falls within the scope of "labor or services" as that term is used in § 1589. In *United States v. Kelly*, the court concluded the defendant had engaged in conduct that violated § 1589 when he ordered one of his victims "to engage in sexual activity and . . . [used] physical and psychological

7

coercion intended to make her submit," and when he forced another victim to perform oral sex on him after placing a gun on the chair next to him. 609 F. Supp. 3d 85, 148-50 (E.D.N.Y. 2022). The court did not identify or rely on any nonsexual "labor or services" in reaching its conclusion.

Similarly, in *Gilbert v. United States Olympic Committee*, several plaintiffs alleged one of the defendants, their former taekwondo coach with the U.S. Olympic team, forced them to have sex with him before he would perform his duties as coach. 423 F. Supp. 3d 1112, 1126-27, 1135-36 (D. Col. 2019). The court concluded the term "labor or services" as used in § 1589 "covers coerced sexual acts such as the 'pay-to-play sexual acts alleged'" by the plaintiffs. *Id.* at 1127 (citations omitted). Further, the court concluded one of the plaintiffs had plausibly alleged a forced-labor claim based in part upon allegations that the defendant drugged her and raped her while she was unconscious. *Id.* at 1135. Like the court in *Kelly*, the court in *Gilbert* did not identify or rely on any nonsexual "labor or services" in reaching its conclusions.

Implicitly, Manish's argument is that, because the typical forced labor case involves active conduct by the victim (whether sexual or nonsexual), § 1589 claims must always involve active conduct. (*See* Doc. No. 19 at 3-8). But this argument is not consistent with the plain language of the statute. Section 1589, in part, prohibits anyone from "knowingly provid[ing] or obtain[ing] the labor or services of a person . . . by means of . . . physical restraint . . . ." 18 U.S.C. § 1589(a)(1). The statutory language does not differentiate between external apparatuses of restraint, such as ropes or handcuffs, and other methods of restraint, such as chemical restraints. Manish fails to show Congress intended to prohibit the former and not the latter.

Plaintiffs have alleged Manish knowingly obtained sex from them after intentionally drugging them into a state of unconsciousness. Viewing these allegations in the light most favorable to Plaintiffs, I conclude Plaintiffs plausibly allege Manish engaged in forced labor in violation of § 1589(a) and § 1595. Therefore, I deny Manish's motion to dismiss as to Count One.

### 2. Count Two

In Count Two, Plaintiffs assert a § 1595 claim alleging Manish engaged in trafficking with respect to forced labor in violation of § 1590. Section 1590 states that "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of [the TVPA]" may be fined or imprisoned. 18 U.S.C. § 1590(a). "[I]f a defendant violates [the prohibition against forced labor in] section 1589, he also violates section 1590 if he recruited the person to perform forced labor." *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 94 (2d Cir. 2019).

Manish argues Plaintiffs have not stated a plausible § 1590 violation because they did not first allege a plausible § 1589 violation. (Doc. No. 19 at 8). Because I have concluded Plaintiffs' claim alleging violation of § 1589 *is* plausible, this argument is unpersuasive.

Plaintiffs allege Manish knowingly recruited them for the purpose of forced labor when he corresponded with them via email "to coordinate and plan out the details of the visits knowing that his intention was to drug [them] into unconsciousness and rape them." (Doc. No. 1 at 15). I conclude Plaintiffs have plausibly alleged a claim of trafficking into forced labor. *See Adia*, 933 F.3d at 94; *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1157 (9th Cir. 2022) (holding plaintiffs' § 1589 claim provided sufficient support for their § 1590 claim). Therefore, I deny Manish's motion to dismiss Count Two.

### 3. Motion to Amend

As I noted above, Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or

9

declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Manish argues Plaintiffs should not be granted leave to amend because their proposed amendments would be futile. (Doc. No. 31 at 3; Doc. No. 39 at 2-3). A proposed amendment "is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). Plaintiffs' proposed amendments do not substantively affect any of their original allegations against Manish. And I already have concluded Plaintiffs allege plausible claims for relief against Manish in Count One and Count Two. Therefore, I deny Manish's motion to strike and grant Plaintiffs leave to amend their complaint.

**4. Summary**

I conclude Plaintiffs have stated plausible claims for relief under § 1595 by pleading sufficient factual allegations to show Manish engaged in conduct prohibited by §§ 1589 and 1590. Therefore, I deny Manish's motion to dismiss Counts One and Two.

Manish also moves to dismiss any claim Plaintiffs may have asserted under § 1591. (Doc. No. 19 at 8-10). As Manish concedes, Plaintiffs reference § 1591 in the original Complaint only as an alleged basis for jurisdiction and not as an independent claim. (*Id.* at 8 ("Although there is no 'claim for relief' made in the Complaint pursuant to Section 1591, the section is mentioned once and alluded to more than once.")). Plaintiffs' citation to § 1591 appears to be intended to establish they have standing as victims to sue following Manish's § 1591 conviction. (Doc. No. 23 at 4-5).

10

Because Plaintiffs do not allege a claim for relief under § 1591, I deny Manish's motion to dismiss on this basis as moot.

Manish's arguments regarding Counts Three through Seven are based upon his assertion that Plaintiffs have not stated a federal cause of action and that I therefore should dismiss their state law claims. Federal law provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 based upon Plaintiffs' claims for relief asserted under federal law. Because I have rejected his motion as to Counts One and Two, I also reject his argument as to Counts Three through Seven.

Finally, I deny Manish's motion to strike, and I grant Plaintiffs leave to file their First Amended Complaint with respect to their claims against Manish.

### C. MOTION FOR JUDGMENT ON THE PLEADINGS

Shraddha filed a partial motion for judgment on the pleadings, arguing she is entitled to judgment in her favor on Counts One, Two, and Five. (Doc. Nos. 17 and 17-1). She contends Plaintiffs fail to state a claim for relief under § 1595 against her for violations of §§ 1589 and 1590 because Plaintiffs have not plausibly alleged that she participated in or benefitted from Manish's conduct. She also argues Plaintiffs fail to state a claim against her under Ohio Revised Code § 2905.32 because that statute creates a cause of action only against a trafficker.

Motions for judgment on the pleadings filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The pleadings must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face."

11

*Twombly,* 550 U.S. at 570. A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC*, 756 F.3d at 896 (citing *Iqbal*, 556 U.S. at 679). Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555. The moving party must show there is no material issue of fact and that the movant is entitled to judgment as a matter of law. *Paskavan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991).

### 1. 18 U.S.C. §§ 1589, 1590, and 1595

In addition to claims against perpetrators, § 1595 permits victims to bring a civil action against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPA]." 18 U.S.C. § 1595(a).

Shraddha argues she is entitled to judgment on the pleadings on Counts One and Two because Plaintiffs have not alleged she knowingly benefitted financially from Manish's actions or participated in any venture Manish maintained that violated § 1589 or § 1590. I agree.

Plaintiffs' allegations in the Complaint regarding Shraddha's conduct are the same for Counts One and Two. Plaintiffs allege:

> As Manish Gupta's wife, Shraddha Gupta received a letter from Jane Doe 1 in 2016 detailing the horrific acts that Manish forced upon her. Upon receipt of this letter, Shraddha did nothing. She kept the letter, but did nothing to uncover the realities of Manish's behavior. Her inaction enabled Manish Gupta to continue his trafficking of women, which led to his second rape of Jane Doe 2 in 2017.

(Doc. No. 1 at 15, 16). In other words, Plaintiffs allege Shraddha is liable because she learned of Jane Doe 1's allegations against Manish and, as his wife, did not investigate or intervene in his conduct. But neither the statutory language nor caselaw supports Plaintiffs' contention that Congress intended for §§ 1589 and 1590 to impose liability on a defendant simply based upon a spousal or familial relationship.

12

Instead, Plaintiffs must plausibly allege Shraddha knew she was receiving something of value from engaging in a business or commercial relationship. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (concluding "the phrase 'participation in a venture' requires that the Does allege that the franchisors <u>took part in a common undertaking or enterprise involving risk and potential profit</u>") (emphasis added). *See also M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) ("In the absence of a direct association, Plaintiff must allege at least a showing of a <u>continuous business relationship</u> between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.") (emphasis added).

Plaintiffs' allegations of liability based upon the marriage relationship fall short of stating a plausible claim for relief. It may be sufficient to observe generally that the nature of a shared financial relationship in the context of a marriage is different in kind from a shared financial relationship in business. To that point, Plaintiffs did not cite to any case in which a court held a spousal or familial relationship alone was enough to impose liability on an alleged beneficiary.

But even if marriage conceivably could provide part of the required connection between a perpetrator and a beneficiary, Plaintiffs could not stand on this allegation alone. In *A.D. v. Choice Hotels International, Inc.*, the court dismissed the plaintiff's claims against a hotel franchisor because the plaintiff did "not sufficiently plead that [the franchisor] participated in a sex trafficking venture beyond participation in shared revenue <u>as part of its normal role</u> as a franchisor." *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-646-JES-NPM, 2023 WL 5510090, at *4 (M.D. Fla. Aug. 25, 2023) (citing *Red Roof Inns*, 21 F.4th at 726-27) (emphasis added).

Plaintiffs have not alleged Shraddha had any participation in Manish's alleged venture other than that the two were married. This allegation is not sufficient to establish Shraddha is liable for Manish's actions.

13

Plaintiffs seek to bolster their allegations in the proposed First Amendment Complaint. There, they add the allegations that:

> Based upon the letter and other indicators Shraddha Gupta knew or should have known that Manish was engaging in human trafficking. . . . Shraddha Gupta and Manish Gupta co-mingled their assets and Shraddha retained control over Manish's earnings and assets from Artisan and benefit[ted] from them. . . . The extensive co-mingling and cooperation between the two made Shraddha a participant in Artisan. . . . Indeed, Shraddha received such extensive benefit from the ventures that the Court in case 3:20CR208 understood that Shraddha would be responsible for paying restitution to Jane Doe 1. . . . Shraddha Gupta accepted approximately 9 million in assets from Manish during their divorce knowing that many of those assets were proceeds were from the venture through which Manish conducted his illegal activities.

(Doc. No. 23 at 15-16, 17-18).

These new allegations do not change the outcome. Plaintiffs offer no basis upon which to infer that the alleged "extensive co-mingling and cooperation" had a business purpose, rather than a marital purpose. Other than the fact of her marriage to Manish, Plaintiffs do not allege any facts which connect Shraddha to Artisan. Nor does Judge Carr's restitution order compel a different conclusion. Shraddha's receipt of the couple's assets in the divorce proceedings, after Manish pled guilty to the criminal charges against him, does not establish Shraddha knowingly participated in a venture within the scope of the statute.

I conclude Plaintiffs' proposed amendments would not state a plausible claim for relief and therefore deny as futile their motion to amend the Complaint as to Counts One and Two against Shraddha.[3]

### 2. Ohio Revised Code §§ 2307.51 and 2905.32

In Count Five, Plaintiffs assert a claim for human trafficking pursuant to §§ 2307.51 and 2905.32. Section 2905.32 provides for criminal sanctions for human trafficking. That statute

---

[3] Because I have concluded Plaintiffs' proposed amendments to these Counts would be futile, I do not consider Shraddha's other arguments in opposition to Plaintiffs' request for leave to amend. (*See* Doc. No. 24-1 at 5-6, 8; Doc. No. 30 at 5-8).

14

provides in part that "[n]o person shall knowingly recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, or knowingly attempt to recruit, lure, entice, isolate, harbor, transport, provide, obtain, or maintain, another person" for purposes of involuntary servitude or to be compelled to engage in sexual activity. Ohio Rev. Code § 2905.32(A). Section 2307.51 permits victims of violations of § 2905.32 to bring civil actions for damages against "the trafficker." Ohio Rev. Code § 2307.51(A).

Shraddha argues she is entitled to judgment on the pleadings, and also that Plaintiffs should not be granted leave to amend their Complaint, as to Count Five, because unlike the TVPA, Ohio law does not provide for beneficiary liability and because Plaintiffs have not plausibly alleged that she is a "trafficker" under the statutes. (Doc. No. 17-1 at 8-9; Doc. No. 30 at 4).

Plaintiffs contend they should be permitted to proceed with this claim because the Ohio "definition of 'trafficker' is sufficiently broader than under the federal statute. Specifically, the statute reaches those who 'provide, obtain, [or] maintain' another knowing the other will be subjected to sex or labor trafficking." (Doc. No. 28-1 at 6).

But Plaintiffs' allegations about Shraddha's conduct do not match up with the statutory provisions. This point is clearest in the original Complaint, where Plaintiffs allege Shraddha "did nothing" after learning of Jane Doe 1's allegations about Manish's actions. (Doc. No. 1 at 21). Section 2905.32 is a criminal statute which requires an individual act "knowingly" and "as a principal." *State v. White*, 118 N.E.3d 410, 428-29 (Ohio Ct. App. 2018). *See also State v. Brown*, 134 N.E.3d 783, 798 (Ohio Ct. App. 2019) (noting § 2905.32 defendant must take "an affirmative action" or be "actively involved" in trafficking another person). Plaintiffs do not explain how their allegations about Shraddha's "inaction," (Doc. No. 1 at 21), plausibly suggest she took any action to "provide, obtain, [or] maintain" either of the Plaintiffs as required by the statute.

Nor do Plaintiffs' proposed amendments help, as Ohio law only provides a civil cause of action against "the trafficker." Ohio Rev. Code § 2307.51(A). None of Plaintiffs' new allegations support the necessary inference that Shraddha knowingly took any active steps to compel either of the Plaintiffs to engage in sexual activity. Therefore, I deny as futile their motion for leave to amend the Complaint as to Count Five.

### D. Motion for Protective Order

On November 16, 2022, Plaintiffs filed a motion for entry of a proposed protective order covering the production by the Federal Bureau of Investigation ("FBI") of FBI records pertaining to its criminal investigation into Manish's actions. (Doc. No. 26). Plaintiffs designated this motion as "stipulated" – a designation I noted was inaccurate because there was no indication of service of the motion on Manish, who is proceeding *pro se*. (Doc. No. 27). I ordered that Manish file any objections to the protective order by December 23, 2022. Manish then filed his objections on December 6, 2022. (Doc. No. 32).

Manish indicates he does not object to a protective order regarding the production of information about the investigation of Plaintiffs' allegations. (*Id.* at 2). But Manish objects to the production of records which describe the FBI's investigation into any other alleged victims. (*Id.* at 2-4). He contends this production would violate the privacy rights of those individuals and that the FBI should have to first obtain the consent of those individuals before producing the records. (*Id.*). These arguments are not persuasive.

The Privacy Act of 1974, 5 U.S.C. § 552a, prohibits federal agencies like the FBI from disclosing any record without the prior written consent of "the individual to whom the record pertains" except in certain circumstances. 5 U.S.C. § 552a(b). Pertinent here is the subsection permitting disclosure pursuant to "the order of a court of competent jurisdiction." *Id.*, 552a(b)(11). This subsection permits the FBI to disclose the records pursuant to Plaintiffs' subpoena. *See, e.g., In*

16

*re Barrett*, 487 F.3d 353, 363 (6th Cir. 2007) (noting federal agency may disclose records otherwise protected by § 552a in response to a subpoena).

Moreover, Manish fails to show he has standing to object to the disclosure of these records based upon the privacy rights of other victims. And the proposed protective order, which restricts who may view the records and the purpose for which they may be used, adequately protects any relevant privacy interest. Therefore, I overrule Manish's objections and grant Plaintiffs' motion for entry of a protective order. (Doc. No. 26).

### E. Motion to Show Cause

Manish has filed a motion for an order directing Plaintiffs to show cause why Plaintiffs' counsel should not be sanctioned. (Doc. No. 33). Manish asserts Plaintiffs' counsel should be sanctioned for failing to properly serve certain filings on him as a *pro se* party. (*Id.* at 1-2). Plaintiffs acknowledge there have been several issues with service and represent they "have undertaken the remedial measure of mailing [Manish] all pleadings they have filed." (Doc. No. 36 at 2). They contend sanctions are not appropriate.

A court's ability to impose sanctions in civil cases is derived from statute, from the Federal Rules of Civil Procedure, and from the court's own implied powers. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Generally, courts may impose sanctions when a party or an attorney engages in litigation for improper purposes, knowingly makes untrue factual representations, or otherwise engages in bad-faith conduct. *Id.* at 42-44. *See also* 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); Fed. R. Civ. P. 11 (permitting courts to impose sanctions on attorneys or parties for violations of Rule 11).

I conclude Manish has not shown sanctions are appropriate and deny his motion. Counsel are reminded of their obligations regarding service of filings upon *pro se* parties, and I expect compliance with those obligations throughout the remainder of this litigation.

### F. Motion for Extension of Time

Finally, Manish has filed a motion for "an extension of time to file" because he is being transferred to another federal prison in the near future. (Doc. No. 43 at 1). Manish does not explain what document he may need more time in which to file, because all other pending motions have been fully briefed and there are no current deadlines for any other filings. Therefore, I deny Manish's motion without prejudice.

## IV. CONCLUSION

For the reasons stated above, I grant the motions to strike, (Doc. Nos. 24 and 31), to the extent they challenge Plaintiffs' ability to file their First Amended Complaint as a matter of course. I deny Manish's Rule 12(b)(6) motion as to Counts One and Two, (Doc. No. 19), and his motion to strike to the extent he argues Plaintiffs' request for leave to amend their Complaint should be denied as futile. (Doc. No. 31). I grant Shraddha's Rule 12(c) motion for judgment on the pleadings on Counts One, Two, and Five, (Doc. No. 17), and grant her motion to strike to the extent she argues Plaintiffs' request for leave to amend the Complaint as to those Counts should be denied as futile. (Doc. No. 24).

I overrule Manish's objections, (Doc. No. 32), and grant Plaintiffs' motion for entry of a protective order. (Doc. No. 26). I deny Manish's motion for entry of a show cause order. (Doc. No. 33).

Finally, I deny without prejudice Manish's motion for production of documents, (Doc. No. 34), and his motion for an extension of time, (Doc. No. 43), because those motions are premature.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge